*McCARTER & ENGLISH, LLP*
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800
Attorneys for Plaintiff
    Healthcare Advocates, Inc.


# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEALTHCARE ADVOCATES, INC., | : | Civil Action No. 05-03524 |
| Plaintiff, | : | |
| v. | : | Honorable Robert F. Kelly |
| HARDING, EARLEY, FOLLMER & FRAILEY; JOHN DOES 1-10, JOHN DOES 11-20, JOHN DOES 21 -30, and INTERNET ARCHIVE, | : | |
| Defendants. | : | |


## MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS OF DEFENDANTS HARDING, EARLEY, FOLLMER & FRAILEY AND INTERNET ARCHIVE TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 6

II. STATEMENT OF FACTS ................................................................................. 8

III. STANDARD OF REVIEW .............................................................................. 16

IV. ARGUMENT ..................................................................................................... 18

A. Healthcare Advocates Has Stated a Claim in Count I for Violation of the Digital Millennium Copyright Act Upon Which Relief Can Be Granted ... 18

    1. The Complaint Establishes that the Denial Text String in the Robots.txt File on the Computer Server Hosting the www.healthcareadvocates.com Web Site "Effectively Controls Access to a [Copyright-Protected] Work" ... 19

    2. The Complaint Establishes that Harding, Earley Law Firm "Circumvented" the Denial Text String in the Robots.Txt File on the Computer Server Hosting the www.healthcareadvocates.com Web Site ... 22

    3. Harding, Earley Law Firm's Recourse to the Legislative History of the DMCA to Attempt to Alter the Plain Meaning of the Statutory Text is Improper and Unpersuasive ... 24

    4. Harding, Earley Law Firm's Violation of the DMCA Does Not Qualify for the Exemption Accorded Nonprofit Libraries, Archives and Educational Institutions ... 26

B. Healthcare Advocates Has Stated a Claim in Count II for Violation of the Copyright Act Upon Which Relief Can Be Granted ... 28

C. Healthcare Advocates Has Stated a Claim in Count III for Violation of the Computer Fraud and Abuse Act Upon Which Relief Can Be Granted ... 28

D. Healthcare Advocates Has Stated a Claim in Count IV for Civil Conspiracy Upon Which Relief Can Be Granted ... 30

E. Healthcare Advocates Has Stated a Claim in Counts V and VI for Trespass to Chattels and Conversion Upon Which Relief Can Be Granted ... 32

F. Healthcare Advocates Has Stated a Claim in Count VII for Intrusion Upon Seclusion Upon Which Relief Can Be Granted ... 34

**G.  Healthcare Advocates is not Precluded as a Matter of Law from Recovering Attorney's Fees Under Counts III-VII**     **36**

**H.  Healthcare Advocates Has Stated a Claim in Count VIII for Breach of Contract Upon Which Relief Can Be Granted**     **37**

**I.  Healthcare Advocates Has Stated a Claim in Count IX for Promissory Estoppel Upon Which Relief Can Be Granted**     **39**

**J.  Healthcare Advocates Has Stated a Claim in Count X for Breach of Fiduciary Duty Upon Which Relief Can Be Granted**     **40**

**K.  Healthcare Advocates Has Stated a Claim in Count XI for Negligent Dispossession Upon Which Relief Can Be Granted**     **42**

**L.  Healthcare Advocates Has Stated a Claim in Count XII for Negligent Misrepresentation Upon Which Relief Can Be Granted**     **43**

**M.  To the Extent that the Court Determines Healthcare Advocates Has Been Deficient in Pleading any Cause of Action, Plaintiff Moves to Amend the Complaint to Cure Such Deficiencies**     **45**

**V.  CONCLUSION**     **45**

## TABLE OF AUTHORITIES

**CASES**

321 Studios v. Metro Goldwyn Mayer Studios, Inc., 307 F. Supp. 2d 1085 (N.D. Cal. 2004).................................20

Allied Artists Pictures Corp. v. Rhodes, 496 F. Supp. 408 (S.D. Ohio 1980), aff'd, 679 F.2d 656 (6th Cir. 1982) ...35

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) ....................................................................................... 18, 45

Baker v. Cuomo, 58 F.3d 814 (2d Cir.), cert. denied sub nom., Pataki v. Baker, 516 U.S. 980 (1995), vacated in part
   on other grounds, 85 F.3d 919 (2d Cir. 1996)..............................................................................................17

Bensel v. Allied Pilots Ass'n, 387 F.3d 298, (3d Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1976 (2005) ......17

Bethel v. Jendoco Constr. Corp., 570 F.2d 1168 (3d Cir. 1978).....................................................................28

Borman v. Raymark Indus., Inc., 960 F.2d 327 (3d Cir. 1992) .......................................................................33

Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n of New England, Inc. 37 F.3d 12 (1st Cir. 1994)......................17

Castle v. Crouse, 2004 WL 257389 (E.D. Pa., Feb. 11, 2004) .......................................................................30

Chambers v. Nasco, Inc., 501 U.S. 32 (1991) ...........................................................................................36

Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225 (3d Cir. 1998)...................................................................25

Conley v. Gibson, 355 U.S. 41 (1957)....................................................................................................17

Davidson & Assoc., Inc. v. Internet Gateway, 334 F. Supp. 2d 1164 (E.D. Mo.), aff'd, Davidson & Assoc., Inc. v.
   Jung, ___ F.3d ___, 2005 WL 2095970 (8th Cir. 2005)................................................................................25

Davies v. Afilias, Ltd., 293 F. Supp. 2d 1265 (M.D. Fla. 2003), aff'd, 129 Fed. Appx. 598 (11th Cir. 2005)...........30

DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005) ....................................................................33

Fabrico Mfg. Corp. v. Wilson Sporting Goods Co., 1985 WL 1474 (N.D. Ill., May 22, 1985) .............................30

Factors Etc., Inc. v. Pro Arts, Inc., 496 F. Supp. 1090 (S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 278 (2d
   Cir. 1981), cert. denied, 456 U.S. 927 (1982).............................................................................................35

G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896 (9th Cir. 1992), cert. denied, 508 U.S.
   959 (1993) .......................................................................................................................................33

Hughes v. Tech. Licensing Consultants, Inc., 815 F. Supp. 847 (W.D. Pa.1992)..............................................30

IMS Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp. 2d 521 (S.D.N.Y. 2004)........................23

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)..................................................... 17, 18, 26

Johnston v. Baker, 445 F.2d 424 (3d Cir. 1971).......................................................................................30

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir.), cert. denied, 501 U.S. 1222 (1991).......................16

Langford v. City of Atlantic City, 235 F.3d 845 (3d Cir. 2000) ......................................................................17

Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) ........................................................................................28

Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522 (6th Cir. 2004)........................... 19, 20, 22

McGary v. City of Portland, 386 F.3d 1259 (9th Cir. 2004) ..........................................................................17

Mele v. Fed. Reserve Bank of N.Y. 359 F.3d 251 (3d Cir. 2004) .......................................................... 17, 26

New Era Publ'n Int'l, ApS v. Henry Holt & Co., Inc., 695 F. Supp. 1493 (S.D.N.Y. 1988) ..................................34

Pearl Investments, LLC v. Standard I/O, Inc., 257 F. Supp. 2d 326 (D. Me. 2003)..............................................21

Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305 (3d Cir. 1999).......................................................16

Ross v. Hotel Employees and Rest. Employers Int'l Union, 266 F.3d 236 (3d Cir. 2001), cert. denied, 534 U.S. 1162
   (2005)..............................................................................................................................................25

Scheuer v. Rhodes, 416 U.S. 232 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982) ..17

Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000).........................................................................................18

Sony Computer Entertainment Am., Inc. v. Gamemasters, 87 F. Supp. 2d 976 (N.D. Cal. 1999)............................21

Tyler v. Armstrong, 365 F.3d 204 (3d Cir. 2004)................................................................................. 17, 32

Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294 (S.D.N.Y. 2000)................................................22

Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001)........................................................................ 18, 45

Wheeler v. Hampton Twp., 399 F.3d 238 (3d Cir. 2005)..............................................................................17

Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651 (3d Cir. 2003)............................................................. 17, 32

**STATUTES**

17 U.S.C. § 101 ...............................................................................................................................34

17 U.S.C. § 102 ...............................................................................................................................34

17 U.S.C. § 1201 .................................................................................................................passim
17 U.S.C. § 301 .........................................................................................................................34
18 U.S.C. § 1030 ...............................................................................................................29, 36
18 U.S.C. § 1927 ......................................................................................................................36

## OTHER AUTHORITIES

_Bonacci v. Save Our Unborn Lives, Inc.,_ 11 Pa. D. & C.3d 259 (Pa.Com.Pl. 1979).................................35
_Bortz v. Noon,_ 556 Pa. 489, 729 A.2d 555 (1999).......................................................................44
_Commonwealth Dept. of Transp. v. E-Z Parks, Inc.,_ 620 A.2d 712 (Pa. Cmwlth.), _appeal denied,_ 534 Pa. 651, 627
    A.2d 181 (1993).....................................................................................................................40
_Crouse v. Cyclops Indus.,_ 560 Pa. 394, 745 A.2d 606 (2000)...........................................30, 39
_eToll, Inc. v. Elias/Savion Adver., Inc.,_ 811 A.2d 10 (Pa.Super. 2002)..........................................40
_Grose v. Proctor & Gamble Paper Prod.,_ 866 A.2d 437 (Pa.Super. 2005) ....................................30
_In re Scott's Estate,_ 455 Pa. 429, 316 A.2d 883 (1974) ...............................................................41
_J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.,_ 792 A.2d 1269 (Pa.Super. 2003)..........................37
_Mackay v. Benjamin Franklin R. & H. Co.,_ 288 Pa. 207, 135 A. 613 (1927).................................33
_Northcraft v. Edward C. Michener Assoc., Inc.,_ 466 A.2d 620 (Pa.Super. 1983)..............................33
_Pestco, Inc. v. Associated Products, Inc.,_ ___ A.2d ___, 2005 WL 1792194 (Pa.Super., July 29, 2005) .................33
_Pursel v. Parkland School Dist.,_ 70 Pa. D. & C.4th 129 (Pa.Com.Pl. 2005) ................................30
_Spickler v. Lombardo,_ 3 Pa. D. & C.3d 591 (Pa.Com.Pl. 1977)........................................................42
_Weavertown Transport Leasing, Inc. v. Moran,_ 834 A.2d 1169 (Pa.Super. 2003), _appeal denied,_ 578 Pa. 685, 849
    A.2d 242 (2004).....................................................................................................................37

## RULES

18 Pa.C.S. § 7614 .....................................................................................................................32
42 Pa.C.S. § 2503 .....................................................................................................................36

## TREATISES

Federal Rule of Civil Procedure 12(b)(6)..................................................................................passim
Federal Rule of Civil Procedure 8(a) ...........................................................................................16

## REGULATIONS

1 M. Nimmer, NIMMER ON COPYRIGHT, § 101 ...........................................................................35
H.R. Rep. No. 105-551, pt. 1, at 18 (1998) ................................................................................24
S. Rep. No. 105-190, at 28 (1998)................................................................................................24
Third Circuit Internal Operating Procedure 5.7 (July 2002)......................................................33

Plaintiff Healthcare Advocates, Inc. ("Healthcare Advocates" or "Plaintiff") respectfully submits this brief in opposition to the motions of Defendant Harding, Earley, Follmer & Frailey ("Harding, Earley law firm" or "Defendant Law Firm") and Defendant Internet Archive ("Internet Archive") to dismiss all the causes of action in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

For years, Healthcare Advocates, like millions of other web site owners, was ignorant of the fact that Internet Archive, in its zeal to become the electronic reincarnation of the legendary Library of Alexandria, regularly engaged in the unauthorized reproduction, public display and distribution of Plaintiff's copyright-protected web pages by periodically gathering them, storing them on its servers, making them available to the public via its Wayback Machine at **www.archive.org**, and permitting public dissemination of them through this portal. Internet Archive never once sought Plaintiff's permission or approval at any point in time to make any such use of its copyright-protected material.

Instead, in an effort to shield itself from massive legal liability for its rampant practice of copyright infringement, Internet Archive afforded Healthcare Advocates and other web site owners the ability to block public access to their historical archived web content that has been unlawfully copied and stored on Internet Archive's servers. According to Internet Archive, all the web site owners had to do was insert a small text string in a specific file on the computer servers hosting their existing web sites. Internet Archive promised that if the web site owners inserted the text string as directed, it would at least cease and desist once and for all in the

ongoing violation of one of their rights of copyright in their web pages, their right of public display.

On June 26, 2003, Healthcare Advocates filed a lawsuit before the Court against Health Advocate, Inc. ("Health Advocate"), a competitor with a deceptively similar name who had perpetrated a fraud on Plaintiff in order to obtain a commercial advantage by making unauthorized use of Plaintiff's proprietary business information and trade secrets. Health Advocate retained Harding, Earley law firm as counsel in that lawsuit.

On July 7, 2003, an investigation of abnormal and suspicious activity on the Internet web logs for the **www.healthcareadvocates.com** web site by Healthcare Advocates revealed that such activity emanated from the Internet Archive's web site **www.archive.org**. Consequently, on July 8, 2003, Healthcare Advocates installed the blocking text string on its computer servers hosting the **www.healthcareadvocates.com** web site to restrict public access to its archived historical web content via the Wayback Machine at **www.archive.org** that had been unlawfully copied and stored by Internet Archive.

The security provided by this blocking text string failed to halt the determined efforts of at least two representatives of Harding, Earley law firm who, on July 9, 2003 and July 14, 2003, attempted to bypass this security measure on at least 716 separate occasions and were successful in hacking into **www.archive.org** and obtaining access to Plaintiff's archived historical web content on at least 92 separate occasions. Despite Healthcare Advocates following Internet Archive's directions on blocking public access, Internet Archive still failed to properly secure Healthcare Advocate's historical archived web content. To add insult to injury, Internet Archive advised Healthcare Advocates on July 10, 2003 that it had fixed the security problem associated with the blocking text string, yet inexplicably representatives of Harding, Earley law firm

continued to successfully hack into **www.archive.org** and access Plaintiff's historical archived web content on July 14, 2003, a mere two business days later. Ultimately, Internet Archive admitted that contrary to the representations it had been making to millions of web site owners for years, the blocking text string, while effective, was not a foolproof means to block public access to the historical archive web content that Internet Archive had unlawfully copied and stored.

Harding, Earley law firm and Internet Archive now seek to avoid liability for the harms they have visited upon Healthcare Advocates through a motion to dismiss all the causes of action in the Complaint for failure to state a claim upon which relief can be granted. The motions are completely lacking in merit and should be denied in their entirety.

## II. STATEMENT OF FACTS

Healthcare Advocates, a pioneer in the patient advocacy field, assists the public in securing, paying for, and receiving reimbursement for necessary health care. The company provides its members with medical research, health care counseling, a physician referral service; access to discount prescription, dental and vision plans; access to private health care financing, counseling on medical bill insurance reimbursement, an insurance fee negotiation service, and an insurance dispute resolution service. Complaint at ¶ 10.

Since 1998, Healthcare Advocates has owned and operated the Internet web site **www.healthcareadvocates.com** which, among other things, lists answers to frequently asked questions about the company, describes the services it offers and the fees that it charges, and provides articles on health care issues and letters from satisfied clients. Plaintiff owns all rights of copyright in the contents of the **www.healthcareadvocates.com** web site. Indeed, Healthcare

Advocates has received from the Register of Copyrights the appropriate Certificates of Copyright Registration for the contents of the **www.healthcareadvocates.com** web site.  Complaint at ¶¶ 11-13.

On June 26, 2003, Healthcare Advocates filed a lawsuit in the United States District Court for the Eastern District of Pennsylvania against Health Advocate alleging misappropriation of trade secrets, unfair competition, tortious interference with existing and prospective business relations, fraud, breach of contract, unjust enrichment, conspiracy, violation of the Lanham Act, trademark and service mark infringement, and copyright infringement (the "Underlying Lawsuit").  Complaint at ¶ 14.

Harding, Earley law firm is an intellectual property boutique.  Defendant Law Firm initially represented all of the defendants in the Underlying Lawsuit.  However, as the litigation progressed, Harding, Earley law firm elected to represent only one of the individual defendants. Complaint at ¶¶ 15-16.

Internet Archive is a non-profit organization founded to build an "Internet library" with the purpose of offering researchers, historians, and scholars permanent access to historical collections that exist in digital format.  In collaboration with the Library of Congress, the Smithsonian Institution and other public organizations, Internet Archive archives the content of publicly accessible Internet web sites.   To gather this information, Internet Archive and its partners have used automated processes to "crawl" the Internet and take snapshots of web site content on a wide variety of dates, capturing a chronological record of the evolving versions of these web sites.  Complaint at ¶¶ 18-19.

The Wayback Machine is a service provided by Internet Archive at **www.archive.org** to allow the public access to these archived versions of web site content.  By typing in the Uniform

Resource Locator ("URL") or Internet web address of a web site of interest into the Wayback Machine, an individual can view and "surf" that web site as it existed on any or all of the capture dates as far back as 1996.  Complaint at ¶ 20.

Internet Archive had an exclusion policy whereby, at the request of a web site owner, it blocked public access to any archived historical content for a web site via the Wayback Machine and refrained from future "crawling" of that web site to capture and archive any additional content.  Such restricted access was accomplished by having the web site owner install a small text string (the "denial text string") in the file named "robots.txt" (the "robots.txt file") on the computer server hosting the web site.  Complaint at ¶ 21.

When an individual attempted to access archived historical content for a web site via the Wayback Machine, **www.archive.org** generated a request to the computer server hosting the web site to search for a denial text string in the robots.txt file.  If that text string existed in the robots.txt file, that individual should have been confronted with a web page entitled "Robots.txt Query Exclusion" advising that the owner of the web site had blocked access to the archived historical content via robots.txt (the "access denial screen") and should have been denied access to the archived historical content of that web site by Internet Archive.  On the other hand, if the denial text string did not exist in the robots.txt file, Internet Archive granted access to the archived historical web site content stored on Internet Archive's computer servers.  Complaint at ¶ 22.

Internet Archive represented to web site owners that as long as the denial text string was properly installed in the robots.txt file of the computer server hosting their web sites, Internet Archive would prevent individuals from gaining access to the archived historical content for their web sites via the Wayback Machine at **www.archive.org**.  Complaint at ¶ 23.

On July 8, 2003, Healthcare Advocates properly installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site. This denial text string remained properly installed on July 9, 2003 and July 14, 2003, and should have blocked access to individuals seeking the archived historical content of the **www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org** on these dates. Complaint at ¶ 24.

On the morning of July 9, 2003, an unknown representative of Harding, Earley law firm attempted to access the archived historical content of the **www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org** and was first confronted with an access denial screen stating "We're sorry, access to **http://www.healthcareadvocates.com** has been blocked by the site owner via robots.txt." Complaint at ¶ 25.

Minutes later on that same date, this unknown representative of Harding, Earley law firm made eight unsuccessful attempts in rapid succession to access the archived historical content of the **www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org**. Immediately thereafter, this unknown representative of Harding, Earley law firm finally managed to successfully circumvent the security offered by the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site. He or she then sought access to the web page describing Healthcare Advocates' services from an archived January 16, 1999 version of the **www.healthcareadvocates.com** web site on Internet Archive's computer servers. Complaint at ¶¶ 26-27.

Within a minute of the first successful unauthorized electronic access by an unknown representative of Harding, Earley law firm, a second unknown representative of Harding, Earley law firm on a different computer attempted to access the archived historical content of the

**www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org** and was first confronted with an access denial screen stating "We're sorry, access to http://www.healthcareadvocates.com/* has been blocked by the site owner via robots.txt." Complaint at ¶ 28.

Minutes later on this same date, this second unknown representative of Harding, Earley law firm made two unsuccessful attempts to access the archived historical content of the **www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org**. Almost immediately thereafter, this second unknown representative of Harding, Earley law firm finally managed to successfully circumvent the security offered by the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site. He or she then sought to access the Healthcare Advocates web page containing an article on relationships from an archived June 9, 2000 version of the **www.healthcareadvocates.com** web site on Internet Archive's computer servers. Complaint at ¶¶ 29-30.

Throughout July 9, 2003, at least two unknown representatives of Harding, Earley law firm made approximately 711 unsuccessful attempts to access the archived historical content of the **www.healthcareadvocates.com** web site stored on Internet Archive's computer servers and succeeded in (a) circumventing the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site; (b) making an unauthorized request to **www.archive.org** for archived historical content of the **www.healthcareadvocates.com** web site stored on Internet Archive's computer servers; (c) causing Internet Archive's computer servers to request and to obtain access to (i) archived historical content of the **www.healthcareadvocates.com** web site from Internet Archive's computer servers; (ii) content of the then current version of the **www.healthcareadvocates.com** web site from the computer

server hosting the **www.healthcareadvocates.com** web site; or (iii) a mixture of archived

historical content and then current content of the **www.healthcareadvocates.com** web site both

from Internet Archive's computer servers and from the computer server hosting the

**www.healthcareadvocates.com** web site; and (d) displaying that content on the screen of the

computer at the offices of Harding, Earley law firm that initiated the request on at least 86

separate occasions.  Complaint at ¶ 31.

On July 9, 2003, Healthcare Advocates advised a representative of Internet Archive about

the unusually heavy volume of web inquiries emanating from **www.archive.org** to the

**www.healthcareadvocates.com** web site, provided Internet Archive with copies of the web logs

from the computer server hosting the **www.healthcareadvocates.com** web site, and requested

that Internet Archive identify and resolve the problem.  Complaint at ¶ 32.

On July 10, 2003, a representative of Internet Archive advised Healthcare Advocates that

the heavy volume of web inquiries emanating from **www.archive.org** to the

**www.healthcareadvocates.com** web site on the previous day occurred because (a) an individual

was "aggressively" utilizing the Wayback Machine to gather archived historical content of the

**www.healthcareadvocates.com** web site; and (b) the mechanism preventing **www.archive.org**

from searching a particular web site's host computer server for a denial text string in the

robots.txt file more than once per day was "broken."  Complaint at ¶ 33.

This representative of Internet Archive further advised Healthcare Advocates that

"[w]e've reset the once-per-day mechanism and so the problem should be ended, for now."

This representative of Internet Archive then admitted to Healthcare Advocates that "a []robots.txt

rule can't really protect against this sort of glitch on our end."  Complaint at ¶¶ 34-35.

On the morning of July 14, 2003, an unknown representative of Harding, Earley law firm made five unsuccessful attempts to access the archived historical content of the **www.healthcareadvocates.com** web site through the Wayback Machine at **www.archive.org**. Complaint at ¶ 36.

Thereafter, within the next half hour, despite the advice from the representative of Internet Archive that the security problem had been resolved, this unknown representative of Harding, Earley law firm succeeded in (a) circumventing the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site; (b) making an unauthorized request to **www.archive.org** for archived historical content of the **www.healthcareadvocates.com** web site stored on Internet Archive's computer servers; (c) causing Internet Archive's computer servers to request and to obtain access to (i) archived historical content of the **www.healthcareadvocates.com** web site from Internet Archive's computer servers; (ii) content of the then current version of the **www.healthcareadvocates.com** web site from the computer server hosting the **www.healthcareadvocates.com** web site; or (iii) a mixture of archived historical content and then current content of the **www.healthcareadvocates.com** web site both from Internet Archive's computer servers and from the computer server hosting the **www.healthcareadvocates.com** web site; and (d) displaying that content on the screen of the computer at the offices of Harding, Earley law firm that initiated the request on at least six separate occasions.  Complaint at ¶ 37.

In an affidavit dated May 20, 2004 that was filed in the Underlying Lawsuit, Frank Bonini, Jr., an attorney in Harding, Earley law firm, admitted under oath as follows:

(a) Harding, Earley law firm, on behalf of its then client Health Advocate, undertook to investigate the claims raised by Healthcare Advocates in the complaint filed in the

Underlying Lawsuit by accessing publicly available Internet web sites, including **www.archive.org**;

(b) the Internet web site **www.archive.org** stores "previously public website pages of others;"

(c) "[a]s part of [Harding, Earley law firm's] investigation, attorneys in [Defendant Law Firm], and a legal assistant, acting under the direction of one or more attorneys of [Defendant Law Firm], accessed public information from the publicly accessible web site, **www.archive.org**, using the methods provided at the web site;"

(d) "[i]n conducting the investigation, when [Harding, Earley law firm] accessed archive.org, and searched the Wayback Machine provided on the archive.org web site, an array of pages by date were presented for the domain name searched;"

(e) Harding, Earley law firm was contemporaneously submitting to the Court *in camera* copies of the materials that "were obtained from archive.org and include copies of previously published web pages of Plaintiffs;" and

(f) "[t]he materials were obtained for the purpose of investigation and analysis of the Plaintiffs' claims, and providing a defense to Health Advocate, Inc., and other defendants." Complaint at ¶ 38.

Despite repeated requests during the course of discovery in the Underlying Lawsuit, Healthcare Advocates has never been provided a copy of or otherwise granted access to the copyright-protected content of the **www.healthcareadvocates.com** web site that Harding, Earley law firm had improperly accessed through **www.archive.org**, downloaded to computers at the offices of Defendant Law Firm, copied as part of Defendant Law Firm's submission to the Court

in the Underlying Lawsuit, and provided to the Court *in camera* on or about May 20, 2004. Complaint at ¶ 39.

In late 2004, counsel for Healthcare Advocates in the Underlying Lawsuit requested from Harding, Earley law firm's co-counsel in the Underlying Lawsuit copies of any and all copyright-protected content of the **www.healthcareadvocates.com** web site that Harding, Earley law firm had provided to co-counsel. Without denying receipt of any such material, co-counsel refused to comply. Complaint at ¶ 40.

## III.  STANDARD OF REVIEW

Harding, Earley law firm has moved to dismiss Counts I through VII of the Complaint and Internet Archive has moved to dismiss Counts VIII through XII of the Complaint on the basis that these causes of action fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of the rule is to permit the trial court to "screen out cases" where no remedy exists for the wrongs alleged or where no relief could possibly be granted. Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 312 (3d Cir. 1999). The burden of persuasion rests with Harding, Earley law firm and Internet Archive to demonstrate that no claim has been stated. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991).

Given that the Federal Rules are premised upon mere "notice pleading," such a dismissal is disfavored. See Fed. R. Civ. P. 8(a) (requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief"). Courts are especially hesitant to dismiss at the pleading stage those claims pressing novel legal theories, where the claims could be better explained following development of the facts through discovery. McGary v. City of Portland,

386 F.3d 1259, 1270 (9th Cir. 2004); Baker v. Cuomo, 58 F.3d 814, 818-19 (2d Cir.), cert.

denied sub nom., Pataki v. Baker, 516 U.S. 980 (1995), vacated in part on other grounds, 85 F.3d

919 (2d Cir. 1996) (en banc).

 A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears beyond

doubt no relief could be granted under any set of facts that could be proved consistent with the

claims.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wheeler v. Hampton Twp., 399 F.3d 238,

242 (3d Cir. 2005).  Indeed, the mere possibility of a claim is sufficient to defeat dismissal.

Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n of New England, Inc.  37 F.3d 12, 17 (1st Cir.

1994).

 A court reviewing the sufficiency of a complaint has a limited role.  In deciding such a

motion, the court must accept as true all factual allegations set forth in the complaint and draw

all reasonable factual inferences from the face of the complaint in the plaintiff's favor.  Tyler v.

Armstrong, 365 F.3d 204, 208 (3d Cir. 2004); Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651,

653 (3d Cir. 2003).  The issue is not whether the plaintiff ultimately will prevail but, rather,

whether the plaintiff is entitled to offer evidence to support its claims.  Scheuer v. Rhodes, 416

U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982);

Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 312 (3d Cir. 2004), cert. denied, ___ U.S. ___, 125

S.Ct. 1976 (2005); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).

 Generally, when conducting such an inquiry, a court may not consider any material

beyond the pleadings.  Mele v. Fed. Reserve Bank of N.Y. 359 F.3d 251, 256 n.5 (3d Cir. 2004);

In re Burlington Coat Factory Sec. Litig.,114 F.3d 1410, 1426 (3d Cir. 1997).  However, an

exception to this general rule dictates that a document "integral to or explicitly relied upon in the

complaint" may be considered as part of a motion to dismiss.  Id.  (citations omitted).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  Alston, 363 F.3d at 236.  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000); In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434.  In assessing "futility," the court applies the same standard of legal sufficiency as applied under Rule 12(b)(6).  Id. )

Harding, Earley law firm and Internet Archive have failed to meet their burden to establish beyond any doubt that no set of facts can be proved consistent with the claims alleged against them in the Complaint when considering all the factual allegations contained therein and all reasonable factual inferences therefrom in the light most favorable to Healthcare Advocates.


## IV.  ARGUMENT

### A.  Healthcare Advocates Has Stated a Claim in Count I for Violation of the Digital Millennium Copyright Act Upon Which Relief Can Be Granted

Count I of the Complaint alleges a cause of action against Harding, Earley law firm under The Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 et seq., which prohibits the circumvention of "a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A) .  Harding, Earley law firm first contends that Healthcare Advocates has failed to sufficiently plead facts demonstrating that it (a) "circumvented" a technological measure that (b) "effectively controls access to a [copyright-protected] work."  Harding Earley law firm next argues that even if Healthcare Advocates is able to set forth a facial violation of the statute, the DMCA is inapplicable here because the historical

archived web content it obtained through such circumvention of a technological measure had previously been obtained in an authorized manner by Defendant Law Firm.  Finally, Harding, Earley law firm claims that any DMCA violation falls within the statutory exemption for nonprofit libraries, archives, and educational institutions.  All of these efforts to dismiss Count I are woefully inadequate and must be denied.

> **1.**    **The Complaint Establishes that the Denial Text String in the Robots.txt File on the Computer Server Hosting the www.healthcareadvocates.com Web Site "Effectively Controls Access to a [Copyright-Protected] Work"**

Harding, Earley law firm contends that Count I should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site "effectively controls access to a [copyright-protected] work."  It asserts that because the facts alleged in the Complaint demonstrate that the denial text string blocks all access to Plaintiff's historical archived web content rather than "controls access" to these copyright-protected works, Healthcare Advocates has failed to sufficiently plead all the elements of a DMCA violation.  Harding, Earley law firm further argues that even if the denial text string did "control access," it did not do so "effectively" because Internet Archive admitted that this security measure was not guaranteed to block public access.  Such arguments are meritless.

The DMCA provides that

> a technological measure "effectively controls access to a work" if the measure in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

17 U.S.C. § 1201(a)(3)(B).  "Gain access to the work" has been defined as "the ability to enter, to obtain, or to make use of."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 546 (6th Cir. 2004).

The Complaint adequately alleges that in the ordinary course of its operation, the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site required the application of a process or a treatment (i.e., its removal) by a representative of Healthcare Advocates for third parties to obtain and to make use of the copyright-protected archived web content through the Wayback Machine at **www.archive.org**.  Complaint at ¶¶ 12, 13, 21-24 & Exhibit A.

Harding, Earley law firm, ignoring the plain language of the statutory definition, argues that the denial text string is not an access control device as contemplated under the statute because it fails to regulate access to the historical archived web site content but instead exclusively blocks access to this content.  Apparently in support of this proposition, it quotes a portion of the Lexmark decision where the court interprets not § 1201(a) but § 1201(b), an unrelated provision under the DMCA that addresses trafficking in technology primarily designed or produced for the purpose of exceeding authorized access to a copyright-protected work. Lexmark, 387 F.3d at 545.  The Lexmark court cites streaming media as a potential environment to which § 1201(b)  applies insofar as an individual has authorization to view or watch online a copyright-protected video but lacks authorization to download a permanent copy of that video. Id.  Such an interpretation has no probative value here.

Harding, Earley law firm's effort to split hairs by distinguishing "regulation of access" from "blocking of access" is inconsequential.  Indeed, in interpreting the phrase "effectively controls access to a work" in the context of § 1201(a) , the Lexmark court cited with approval several cases that "apply the provision in what seems to us its most natural sense."  Id. at 547. Such cases included 321 Studios v. Metro Goldwyn Mayer Studios, Inc., 307 F. Supp. 2d 1085, 1095 (N.D. Cal. 2004) (deciding that the "CSS" encryption program, which prevents viewing of

DVD movies and copying of the data encoded on the DVD, effectively controls access to copyrighted DVD movies); <u>Sony Computer Entertainment Am., Inc. v. Gamemasters</u>, 87 F. Supp. 2d 976, 987 (N.D. Cal. 1999) (deciding that technological measure on PlayStation game console, which prevented unauthorized games from being played, effectively controlled access to copyrighted CD-ROM video games, which the facts of the case do not describe as either encrypted or unencrypted); <u>Pearl Investments, LLC v. Standard I/O, Inc.</u>, 257 F. Supp. 2d 326, 349-50 (D. Me. 2003) (determining that plaintiff's "encrypted, password-protected virtual private network," which blocked access to data including plaintiff's copyrighted computer software, was a technological measure that effectively controlled access to that work). As is obvious, all three of these cases interpret technological measures that block or prevent access entirely to copyright-protected works to fall within the ambit of "effectively controls access to a work."

Harding, Earley law firm further contends that the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site failed to "effectively control access" because it was not "effective." It argues that the denial text string could not have been "effective" because the Complaint's alleges that Internet Archive admitted the security feature became "broken" at some point in time and further admitted that "a []robots.txt rule can't really protect against this sort of glitch on our end." Complaint at ¶¶ 33 & 35.

The flaw in this argument is Harding, Earley law firm's attempt to segregate "effective" from the statutory definition "effectively controls access to a work" and to ascribe it a meaning unintended by the statute. As noted above, "effectively controls access to a work" is a term of art defined at 17 U.S.C. § 1201(a)(3)(B) that equates "effectively" with "in the ordinary course

of its operation."  Harding, Earley law firm improperly seeks to define "effective" as "foolproof"

or "guaranteed" and conclude that the denial text string in the robots.txt file on the computer

server hosting the **www.healthcareadvocates.com** web site was "ineffective" because, at some

point in time, it ceased operating as intended.  However, "a precondition for DMCA liability is

not the creation of an impervious shield to the copyrighted work."  Lexmark, 387 F.3d at 549.

See also Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 317-18 (S.D.N.Y.

2000) (rejecting argument that a "weak cipher" does not "effectively control access to a work").

Furthermore, Harding, Earley law firm points to the statement by Internet Archive that "a

[]robots.txt rule can't really protect against this sort of glitch on our end" and claims that it is

tantamount to an admission that the denial text string in the robots.txt file on the computer server

hosting the **www.healthcareadvocates.com** web site has never worked properly and, thus, is not

"effective."  Nevertheless, when viewed in a light most favorable to Plaintiff, a reasonable

inference – and, indeed, the most logical inference – to be derived from this statement is that the

denial text string in the robots.txt file controls access to archived web pages through the

Wayback Machine at **www.archive.org** in the ordinary course of its operation, but that the

protection it provides is not guaranteed or absolute.  It is a candid admission that while the denial

text string in the robots.txt file is an effective control mechanism, it is not a panacea.

Accordingly, Plaintiff has adequately pleaded that the denial text string in the robots.txt file

"effectively controls access to a work."

> **2.    The Complaint Establishes that Harding, Earley Law Firm
> "Circumvented" the Denial Text String in the Robots.Txt File on the
> Computer Server Hosting the www.healthcareadvocates.com Web Site**

Harding, Earley law firm further contends that it did not engage in any "circumvention"

of the denial text string in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site because "Internet Archive has already admitted that

the door was open." Def. Bf. at 7.  As noted above in subsection A.1, Internet Archive made no

such admission when the statement at issue is viewed in the light most favorable to Healthcare

Advocates.  Indeed, the Complaint painstakingly alleges facts demonstrating that representatives

of  Harding, Earley law firm repeatedly and consistently bypassed the security offered by the

robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site and

gained unauthorized access to Plaintiff's historical archived web content on almost one hundred

separate occasions over the course of two days.  Complaint at ¶¶ 27, 30, 31 & 37.

Undeterred, Harding, Earley law firm argues that no "circumvention" could have taken

place because, when obtaining access to Plaintiff's historical archived web content through the

Wayback Machine via **www.archive.org** on or after July 9, 2003, Defendant Law Firm

"borrowed what Internet Archive had previously, lawfully and unrestrictedly, obtained from

HAI's website."  Def. Bf. at 11.  There are no factual allegations in the Complaint or cognizable

inferences therefrom to support the proposition that Internet Archive legally copied, stored and

made available to the public Plaintiff's copyright-protected web pages.  Indeed, it is a reasonable

inference from the allegations in the Complaint that Internet Archive does not obtain permission

in advance from web site owners before capturing, preserving, displaying and disseminating their

copyright-protected web pages.  Complaint at ¶¶ 19 & 21.  Because Harding, Earley law firm's

premise that it was "borrowing" web site content legally obtained by Internet Archive is unsound

and unsupported, its reliance upon IMS Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.,

307 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2004) is unpersuasive.

Plaintiff has adequately pleaded that Harding, Earley law firm "circumvented" the denial

text string in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site.

3.    **Harding, Earley Law Firm's Recourse to the Legislative History of the DMCA to Attempt to Alter the Plain Meaning of the Statutory Text is Improper and Unpersuasive**

Harding, Earley law firm further asserts that Count I should be dismissed because even when viewing the factual allegations in the Complaint in a light most favorable to Healthcare Advocates, the Complaint fails to adequately allege violation of the DMCA because, even if Defendant Law Firm circumvented the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site and gained unauthorized access to Plaintiff's historical archived web content through the Wayback Machine at **www.archive.org** on July 9, 2003 and July14, 2003, the material accessed on these dates had already been accessed in an authorized manner by Defendant Law Firm through the Wayback Machine at **www.archive.org** on prior dates.

Harding, Earley law firm liberally quotes from the legislative history of the DMCA as support for the proposition that § 1201(a)(1)(A)  of the DMCA protects only the initial access to copyright-protected works, not subsequent access to these same works.  In other words, according to Harding, Earley law firm, this section of the DMCA does not restrict the ability of an individual to circumvent technological measures to regain access to a copyright-protected work to which this individual had previously gained authorized access.  See H.R. Rep. No. 105-551, pt. 1, at 18 (1998); S. Rep. No. 105-190, at 28 (1998).  Defendant Law Firm then claims that because Healthcare Advocates concedes in the Complaint that Defendant Law Firm obtained authorized access to Plaintiff's historical archived web content through the Wayback Machine at **www.archive.org** prior to July 9, 2003, any such access to this same material on or after July 9 arguably involving circumvention of technological measures fails to constitute a violation of the DMCA.

First and foremost, Harding, Earley law firm fails to appreciate that well-settled principles of statutory interpretation permit consultation of the legislative history for guidance as to the meaning of statutory language only where the plain language of the statute is unclear. Ross v. Hotel Employees and Rest. Employers Int'l Union, 266 F.3d 236, 245 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2005); Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 233 (3d Cir. 1998). If the statutory language is clear and unambiguous, recourse to the legislative history is unwarranted because the intent of Congress is evident from that plain language. Id. ; Here, the language of § 1201(a)(1)(A) is clear and unambiguous: any circumvention of a technological measure that effectively controls access to a copyright-protected work constitutes a violation of the DMCA. The statute does not distinguish between initial access and subsequent access to such a work. If Congress had intended to draw such a distinction, it easily could have included such qualifying language in the statute. In light of the fact that Congressional intent with regard to this subsection is clear from language of the statute, the legislative history is irrelevant. See Davidson & Assoc., Inc. v. Internet Gateway, 334 F. Supp. 2d 1164, 1184-85 (E.D. Mo.) aff'd, Davidson & Assoc., Inc. v. Jung, ___ F.3d ___, 2005 WL 2095970 (8th Cir. 2005) (ignoring this same portion of DMCA legislative history in granting summary judgment for plaintiff on § 1201(a)(1)(A) claim).

In the alternative, even assuming this legislative history is somehow relevant to interpreting § 1201(a)(1)(A), there are no factual allegations in the Complaint or cognizable inferences therefrom to support Harding, Earley law firm's contention that it obtained authorized access prior to July 9, 2003 to the archived web pages through the Wayback Machine at **www.archive.org** to which it subsequently gained access on or after July 9, 2003. Contrary to Harding, Earley law firm's claim, paragraph 24 of the Complaint provides no support for that

proposition.  Defendant Law Firm's reliance upon a surreply brief filed in the Underlying

Lawsuit is improper in a Rule 12(b)(6) motion because this document is not integral to or

explicitly relied upon in the Complaint.  See Mele, 359 F.3d at 256 n.5; In re Burlington Coat

Factory Sec. Litig., 114 F.3d at 1426.

But even if the Court were to consider statements in this surreply brief, Harding, Earley

law firm still fails to meet its burden.  Consideration of this brief in conjunction with the

allegations in Complaint does not assist in identifying the particular historical archived web

content to which Harding, Earley law firm gained access both before July 9, 2003 and on and

after July 9, 2003.  In other words, there still is no means of determining on this limited record

how much, if any, of the historical archived web content was accessed by representatives of

Harding, Earley law firm both before and after insertion of the denial text string in the robots.txt

file on the computer server hosting the **www.healthcareadvocates.com** web site.  Accordingly,

there is no ability for Harding, Earley law firm to demonstrate that it gained initial access to

historical archived web content prior to July 9, 2003 and subsequent access to that same web

content on or after July 9, 2003.

Thus, Harding, Earley law firm's argument that the legislative history to the DMCA

warrants dismissal of Count I is unavailing.

### 4.    Harding, Earley Law Firm's Violation of the DMCA Does Not Qualify for the Exemption Accorded Nonprofit Libraries, Archives and Educational Institutions

Harding, Earley law firm continues to claim that somehow any circumvention of

technological measures by its representatives to gain access to Plaintiff's historical archived web

content does not constitute a violation of § 1201(a)(1)(A) because such conduct falls within an

exemption set forth in the statute for nonprofit libraries, archives, and educational institutions.

That exemption is inapplicable to Harding, Earley law firm.

The DMCA provides as follows:

> A nonprofit library, archives, or educational institution which gains access to a commercially exploited copyrighted work <u>solely in order to make a good faith determination of whether to acquire a copy</u> of that work for the sole purpose of engaging in conduct permitted under this title shall not be in violation of subsection (a)(1)(A). A copy of a work to which access has been gained under this paragraph (A) may not be retained longer than necessary to make such good faith determination; and (B) may not be used for any other purpose.

17 U.S.C. § 1201(d)(1)(emphasis added).

First, Harding, Earley law firm is not a library, archives or educational institution. Second, even if Internet Archive qualifies as a nonprofit library or archives for the purposes of this exemption, it is unclear how Harding, Earley law firm would have standing to raise this exemption on its behalf either in conjunction with or to the exclusion of Internet Archive.

Third, even if Harding, Earley law firm somehow had such standing, there are no factual allegations in the Complaint or cognizable inferences therefrom to support the position that Internet Archive obtained access to Plaintiff's copyright-protected web content in order to make a good faith determination whether to acquire it. Indeed, the allegations in the Complaint conversely support the view that Internet Archive simply unlawfully acquired Plaintiff's copyright-protected web content in the first instance for the purpose of archiving it and making it available to the public. There was no intermediate step of Internet Archive gaining access to this web content for the purpose of considering its lawful acquisition. Complaint at ¶ 19.

Harding, Earley law firm's attempt to rely upon the DMCA exemption for nonprofit libraries, archives and educational institutions is meritless.

**B. Healthcare Advocates Has Stated a Claim in Count II for Violation of the Copyright Act Upon Which Relief Can Be Granted**

Harding, Earley law firm contends that Count II should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that Defendant Law Firm engaged in copyright infringement in violation of the Copyright Act.  More specifically, Harding, Earley law firm relies exclusively on a quotation from NIMMER ON COPYRIGHT and cases cited therein in support of the position that reproduction of a copyright-protected work for the purpose of submitting it to a court or in evidence in a judicial proceeding constitutes fair use.  Harding, Earley law firm claims that the factual basis in the Complaint supporting the raising of this affirmative defense in a Rule 12(b)(6) motion to dismiss is the statements in paragraph 38(e) and (f) that Defendant Law Firm submitted Plaintiff's historical archived web content to the Court *in camera* in the Underlying Lawsuit and that this historical web content was acquired "to procure evidence for use in the underlying lawsuit."  Def. Bf. at 14.

It is well settled that an affirmative defense will serve as grounds for a Rule 12(b)(6) dismissal only if the basis for the defense is evident on the face of the complaint.  Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978).  There is no allegation in Count II that Harding, Earley law firm infringed Plaintiff's rights of copyright by reproducing Plaintiff's historical archived web content for submission to the Court *in camera*.  See Complaint at ¶¶ 49-52.  Because this affirmative defense of fair use is not evident from the face of the Complaint, such an argument is unavailing.

Harding, Earley law firm's motion to dismiss Count II should be denied.

**C. Healthcare Advocates Has Stated a Claim in Count III for Violation of the Computer Fraud and Abuse Act Upon Which Relief Can Be Granted**

Harding, Earley law firm contends that Count III should be dismissed because Healthcare

Advocates has failed to sufficiently plead facts demonstrating that it violated the Computer

Fraud and Abuse Act (the "CFAA").  Harding, Earley law firm asserts that it did not gain

unauthorized access to Plaintiff's archived web pages either because the denial text string was

not properly installed in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site or because Internet Archive failed to adequately secure

this historical archived web content.

The CFAA provides as follows:

> Whoever intentionally accesses a computer without authorization
> or exceeds authorized access, and thereby obtains information
> from any protected computer if the conduct involved an interstate
> or foreign communication [has violated the Act].

18 U.S.C. § 1030(a)(2)(C) .

As noted above, the Court must accept for the purposes of this motion the allegation in

the Complaint that the denial text string was properly installed in the robots.txt file on the

computer server hosting the **www.healthcareadvocates.com** web site on July 9, 2003 and July

14, 2003.  Complaint at ¶ 24.  Furthermore, it is reasonable to infer that any problems Internet

Archive was experiencing with the security offered by the robots.txt exclusion was either caused

by Harding, Earley law firm's efforts at gaining unauthorized access to Plaintiff's historical

archived web content or that such problems failed to contribute to the ability of Harding, Earley

law firm to gain unauthorized access to Plaintiff's archived web pages.  These are factual matters

that must be fleshed out in discovery.  They are not a basis to dismiss a cause of action under

Rule 12(b)(6).

Moreover, there has been no allegation that Internet Archive willfully provided

representatives of Harding, Earley law firm access to Plaintiff's historical archived web content

in contravention of the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site.  Accordingly, Harding, Earley law firm's reliance upon <u>Davies v. Afilias, Ltd.</u>, 293 F. Supp. 2d 1265, 1273 (M.D. Fla. 2003), <u>aff'd</u>, 129 Fed. Appx. 598 (11th Cir. 2005) is misplaced.

Harding, Earley law firm's motion to dismiss Count III should be denied.

### D.  Healthcare Advocates Has Stated a Claim in Count IV for Civil Conspiracy Upon Which Relief Can Be Granted

Harding, Earley law firm contends that Count IV should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law civil conspiracy.

Harding, Earley law firm is correct in asserting as a general proposition that a single entity cannot conspire with itself and that agents of a single entity cannot conspire among themselves.  <u>Grose v. Proctor & Gamble Paper Prod.</u>, 866 A.2d 437, 441 (Pa.Super. 2005). However, there is an exception to this rule where the agent or employee acts in pursuit of his or her own self-interest, not for the benefit of the entity.  <u>Pursel v. Parkland School Dist.</u>, 70 Pa. D. & C.4th 129, 140 (Pa.Com.Pl. 2005)(citing <u>Castle v. Crouse</u>, 2004 WL 257389, *6 (E.D.Pa., Feb. 11, 2004)); <u>United Nat'l Ins. Co. v. Equip. Ins. Managers</u>, 1995 WL 631709, *6 (E.D. Pa., Oct.27, 1995)(citing <u>Johnston v. Baker</u>, 445 F.2d 424, 426-27 (3d Cir. 1971); <u>Hughes v. Tech. Licensing Consultants, Inc.</u>, 815 F. Supp. 847, 851 (W.D. Pa.1992); <u>Fabrico Mfg. Corp. v. Wilson Sporting Goods Co.</u>, 1985 WL 1474, *2 (N.D. Ill., May 22, 1985)).

Harding, Earley law firm has admitted that "attorneys in [Defendant Law Firm], and a legal assistant, acting under the direction of one or more attorneys of [Defendant Law Firm]" were responsible for gaining access to Plaintiff's archived web pages through the Wayback

Machine at **www.archive.org** on July 9, 2003 and July 14, 2005.  Complaint  at ¶ 38(c).  It is a reasonable inference that the attorneys who participated in gaining such unauthorized access and directed that conduct include one or more partners of Harding, Earley law firm.  Indeed, Healthcare Advocates has, by necessity, filed suit against a number of John Doe's including John Does 1-10 who are identified as "past or present partners of defendant Harding, Earley law firm who directly participated in, aided and abetted, or were members of a conspiracy that pursued a goal of obtaining unauthorized access to the copyright-protected historical content of the Internet web site **www.healthcareadvocates.com** through the Internet Archive Wayback Machine via the Internet web site **www.archive.org**."  Complaint at ¶ 4.

It is furthermore reasonable to infer that the unauthorized access was accomplished and/or directed by the partner or partners of Harding, Earley law firm who stood to reap personal financial gain from the successful defense of their then client Health Advocate, and that personal financial gain motivated such conduct rather than the best interests of Harding, Earley law firm. It is imperative that Healthcare Advocates be permitted to conduct discovery on this issue to determine whether the partners of Harding, Earley law firm who participated in and/or supervised the unauthorized access of Plaintiff's historical archived web content were acting as agents of Defendant Law Firm or, instead, for selfish personal motives.

Harding Earley law firm further claims that the factual allegations in the Complaint and the reasonable inferences therefrom fail to support the element of civil conspiracy that Defendant Law Firm acted with malice.  To the contrary, the Complaint adequately alleges that after accessing web pages placing them on notice that Plaintiff's historical archived web content had been blocked from public access, multiple representatives of Harding, Earley law firm nevertheless attempted to gain unauthorized access to Plaintiff's archived web pages through the

Wayback Machine at **www.archive.org** on July 9, 2003 and July 14, 2003 on at least 716 separate occasions and were successful in obtaining unauthorized access to these archived web pages on at least 92 separate occasions.  Complaint at ¶¶ 25-37.

Harding, Earley law firm finally contends that Plaintiff has failed to "show that the Harding law firm committed an unlawful act."  Def. Bf. at 17.  Harding, Earley law firm misstates Plaintiff's burden.  As noted above, Healthcare Advocates is required only to be judged by whether the factual allegations and the reasonable inferences therefrom in the Complaint meet the elements of the causes of action.  See Tyler, 365 F.3d at 208; Worldcom, 343 F.3d at 653. Healthcare Advocates does adequately allege facts demonstrating that Harding, Earley law firm made and caused to be made unauthorized copies of computer data residing and communicated by the Internet Archives computer servers storing historical archived web content and the computer server hosting the **www.healthcareadvocates.com** web site as required by 18 Pa.C.S. § 7614(a).

Harding, Earley law firm's motion to dismiss Count IV should be denied.


   **E.  Healthcare Advocates Has Stated a Claim in Counts V and VI for Trespass to Chattels and Conversion Upon Which Relief Can Be Granted**

Harding, Earley law firm contends that Counts V and VI should be dismissed because these causes of action for trespass to chattels and conversion, respectively, is pre-empted by the Copyright Act.  Defendant Law Firm further asserts that these common law causes of action must fail because they can only be based upon some tangible form of property.  Such arguments are unavailing.

In support of the legal theory that causes of action in trespass to chattels and conversion are pre-empted by the Copyright Act, Harding, Earley law firm can muster only one unpublished

opinion.  Unpublished opinions have no precedential value, and should not be cited as the sole authority for a proposition of law.  See DiBella v. Borough of Beachwood, 407 F.3d 599, 602 n.*** (3d Cir. 2005); Borman v. Raymark Indus., Inc., 960 F.2d 327, 333 n.9 (3d Cir. 1992); see also Third Circuit Internal Operating Procedure 5.7 (July 2002).  Accordingly, the opinion cited by Harding, Earley law firm is worthless.

By contrast, a published decision of the Court of Appeals for the Ninth Circuit has recognized that intangible property rights can form the basis for a state common law conversion claim which is not pre-empted by the Copyright Act.  G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896 (9th Cir. 1992), cert. denied, 508 U.S. 959 (1993).  In Kalitta, the court identified the act of conversion as photocopying an airplane airworthiness certificate and submitting it to the Federal Aviation Administration.  Id. at 907.  It held that this conduct "does not in any way interfere with the operation of the copyright laws" and, thus, was not pre-empted by the Copyright Act.  Id. at 904.  Such conduct is similar to that alleged in Count VI.

With regard to trespass to chattels, Healthcare Advocates acknowledges that "Pennsylvania courts have long-recognized that the tort of trespass to chattel must be based upon some tangible form of property."  Pestco, Inc. v. Associated Products, Inc., ___ A.2d ___, 2005 WL 1792194, *7 (Pa.Super., July 29, 2005).  In using the word "tangible," the Pestco court is not foreclosing this cause of action for intellectual property.  It is merely confirming that a trespass to chattels involve a chattel "whose existence is ascertainable by some concrete proof" rather than one which is ephemeral.  Northcraft v. Edward C. Michener Assoc., Inc., 466 A.2d 620, 628 (Pa.Super. 1983).

In reaching this conclusion, the Pestco court cites Mackay v. Benjamin Franklin R. & H. Co., 288 Pa. 207, 135 A. 613 (1927) wherein that court distinguished between architectural plans

as "physical property" with the ideas contained within these plans, categorizing the latter as "intangible." Id. at 614. Likewise, copyright law protects the embodiment of creative expression, not the ideas themselves. See 17 U.S.C. §§ 101 and 102(a). In the Complaint, the property at issue is archived web site content which is ascertainable by concrete proof rather than being theoretical. As such, it constitutes "tangible property" for the purpose of the trespass to chattels cause of action in Count V.

Since Harding, Earley law firm has failed to meet its burden of persuasion, its motion to dismiss Counts V and VI should be denied.


**F. Healthcare Advocates Has Stated a Claim in Count VII for Intrusion Upon Seclusion Upon Which Relief Can Be Granted**

Harding, Earley law firm contends that Count VII should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law intrusion upon seclusion.

Harding, Earley law firm first argues that this cause of action as well is pre-empted by the Copyright Act. State statutes or common law are subject to federal pre-emption only if they create "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106." 17 U.S.C. § 301(a). Such is not the case with common law privacy rights, including intrusion upon seclusion. While invasion of privacy may sometimes occur by acts of reproduction, distribution, performance, or public display, such common law causes of action are not pre-empted by the Copyright Act because the essence of these torts are not grounded in such acts. New Era Publ'n Int'l, ApS v. Henry Holt & Co., Inc., 695 F. Supp. 1493, 1505 (S.D.N.Y. 1988); Factors Etc., Inc. v. Pro Arts, Inc., 496 F. Supp. 1090, 1097 (S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 278 (2d Cir. 1981), cert.

denied, 456 U.S. 927 (1982); Allied Artists Pictures Corp. v. Rhodes, 496 F. Supp. 408, 443

(S.D. Ohio 1980), aff'd, 679 F.2d 656 (6th Cir. 1982); see also 1 M. Nimmer, NIMMER ON

COPYRIGHT, § 101 [B][1][c] at 1-23.

 Harding, Earley law firm further contends that Plaintiff failed to allege facts

demonstrating solitude or seclusion in its publicly accessible Internet web site.  Harding, Earley

law firm apparently misunderstands the nature of this privacy claim.  The publicly accessible

**www.healthcareadvocates.com** web site does not give rise to this cause of action.  The solitude

and seclusion is predicated upon Healthcare Advocates taking the affirmative act of installing the

denial text string in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site in order to block public access to its historical archived

web content stored by Internet Archive and accessible via the Wayback Machine at

**www.archive.org**, a security measure advocated by Internet Archive that Internet Archive led

Plaintiff to believe would, in fact, preclude public access.  Complaint at ¶¶ 21, 23 & 24

 Finally, Harding, Earley law firm appears to claim that Healthcare Advocates cannot, as a

matter of law, demonstrate that its intrusion upon such solitude and seclusion could be deemed

highly offensive to a reasonable person.  Unsurprisingly, Defendant Law Firm fails to cite any

support for this counterintuitive proposition.  Indeed, whether a particular invasion of privacy is

so objectionable that it is deemed highly offensive to a reasonable person is a matter of fact to be

ascertained during discovery.  Bonacci v. Save Our Unborn Lives, Inc., 11 Pa. D. & C.3d 259,

269 (Pa.Com.Pl. 1979) ("Certainly, whether a given intrusion is or is not 'highly offensive' is for

a factfinder to determine").

 Harding, Earley law firm's motion to dismiss Count VII should be denied

**G.  Healthcare Advocates is not Precluded as a Matter of Law from Recovering Attorney's Fees Under Counts III-VII**

Not content with arguing that Healthcare Advocates has failed to state a claim upon which relief can be granted for each and every cause of action alleged against it, Harding, Earley law firm furthermore seeks to have the Court rule that Plaintiff is not entitled to specific relief under certain of these causes of action.  More specifically, Harding, Earley law firm seeks an order that Healthcare Advocates, as a matter of law, may not recover attorneys' fees under Counts III – VII, the violation of the CFAA and all the common law causes of action.  Such an argument has no merit.

Federal trial courts have inherent power to assess attorney's fees against counsel even though the so-called "American Rule" prohibits fee shifting in most cases.  Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991).  Courts may exercise this equitable power to reward a party whose litigation efforts directly benefit others.  Id.  Conversely, courts may also resort to this power as a sanction against a party where that party has acted in bad faith, vexatiously, wantonly or for oppressive reasons; has committed a fraud upon the court; has willfully disobeyed an order of the court; or has delayed or disrupted the litigation or hampered enforcement of a court order.  Id. .  See also 18 U.S.C. § 1927 (empowers court to award attorneys' fees paid by opposing counsel personally where opposing counsel "so multiplies the proceedings in any case unreasonably and vexatiously"); 42 Pa.C.S. § 2503(7) (award of attorneys' fees sanctioned where opposing party engaged in "dilatory, obdurate or vexatious conduct").

Therefore, it is clear that, as a matter of law, Healthcare Advocates is not foreclosed from recovering attorneys' fees under Counts III – VIII.  This motion should be denied.

**H.  Healthcare Advocates Has Stated a Claim in Count VIII for Breach of Contract Upon Which Relief Can Be Granted**

Internet Archive contends that Count VIII should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating the existence of the contract allegedly breached.  Internet Archive argues that there was no mutual understanding, no exchange of consideration, and lack of any clear contractual terms.

A claim for breach of contract requires that a plaintiff allege the existence of a contract, breach of a duty imposed by that contract, and damages.  J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1271 (Pa.Super. 2003).  The existence of a contract is measured by a demonstration that the parties to it reached a mutual understanding, exchanged consideration, and delineated its terms with sufficient clarity.  Weavertown Transport Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa.Super. 2003), appeal denied, 578 Pa. 685, 849 A.2d 242 (2004).  "[I]t is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties."  J.F. Walker Co. , 792 A.2d at 1272.

As is evident from the Complaint, the mutual understanding and the unambiguous terms of the contract were that if Healthcare Advocates installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site, Internet Archives would block third party access to Plaintiff's copyright-protected archived web pages.  Complaint at  ¶ 23.  That mutual understanding was reached on July 8, 2003 when Healthcare Advocates in fact properly installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site as directed by Internet Archive, and expected Internet Archives to honor its duty under the contract to block public access to this historical archived web content.  Complaint at ¶ 24.

Internet Archive contends that such a mutual understanding is contradicted by the factual

allegation in the Complaint that on July 10, 2003, a representative of Internet Archive advised Healthcare Advocates that "a []robots.txt rule can't really protect against this sort of glitch on our end."  Complaint at ¶ 35.  Internet Archive claims that such an admission demonstrates a lack of mutual understanding.  Nothing could be further from the truth.

In fact, as is easily inferred from the conduct of the parties, the contract had been formed on July 8, 2003, two days before the statement at issue.  Rather than negating the mutual understanding, the admission that "a []robots.txt rule can't really protect against this sort of glitch on our end" was a misguided unilateral effort by Internet Archive to repudiate the contract upon discovering that it had breached the contract.

Furthermore, there certainly was consideration for this contract.  It is reasonable to infer that the benefit flowing to Internet Archive in return for blocking public access to Plaintiff's historical archived web content was that Healthcare Advocates would forebear from pursuing a claim of copyright infringement against Internet Archive for unauthorized reproduction, distribution and public display of its copyright-protected web pages which Internet Archive had gathered, stored on its servers, made available to the public, and publicly disseminated without the authorization of Healthcare Advocates.  Complaint at ¶¶ 19-23.  For Internet Archive, honoring the robots.txt exclusion was not a display of altruism; rather, it was a prophylactic measure to reduce the risk that it would routinely be sued for copyright infringement by web site owners over its general practice of unauthorized reproduction, public display and distribution of copyright-protected web pages and content.

Internet Archive's motion to dismiss Count VIII should be denied.

**I.    Healthcare Advocates Has Stated a Claim in Count IX for Promissory Estoppel Upon Which Relief Can Be Granted**

Internet Archive contends that Count IX should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law promissory estoppel.

To maintain a promissory estoppel cause of action, a claimant must aver that: (1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  Crouse v. Cyclops Indus., 560 Pa. 394, 403, 745 A.2d 606, 610 (2000).  This doctrine permits the enforcement of a promise forming the basis for a contract that is deemed unsupported by consideration.  Id.

Internet Archive promised Healthcare Advocates that it would block public access to the archived historical content of the **www.healthcareadvocates.com** web site if Plaintiff installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site.  Complaint at ¶ 23.  Internet Archive should have reasonably expected that this promise would induce Healthcare Advocates to install the denial text string as directed and forebear from taking any further measures to block public access to its historical archived web content through the Wayback Machine via **www.archive.org**. Complaint at ¶ 23.  In reliance upon this promise, Healthcare Advocates actually installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site and refrained from taking any further measures to block public access to its historical archived web content.  Complaint at ¶ 24.

Furthermore, injustice can only be avoided by enforcing the promise made by Internet

Archive.  Such reliance caused Healthcare Advocates to trust Internet Archive that its copyright-protected archived web pages had been secured against access by third parties.  Complaint at ¶ 24.  In fact, this historical archived web content was far from secure as evidenced by representatives of Harding, Earley law firm succeeding in bypassing the robots.txt exclusion on at least 92 separate occasions on July 9, 2003 and July 14, 2003 and engaging in unauthorized reproduction, public display and distribution of these copyright-protected works.  Complaint at ¶¶ 31 & 37.

     Internet Archive's motion to dismiss Count IX should be denied.

### J.  Healthcare Advocates Has Stated a Claim in Count X for Breach of Fiduciary Duty Upon Which Relief Can Be Granted

     Internet Archive contends that Count X should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law breach of fiduciary duty.

     To adequately plead a cause of action for breach of fiduciary duty, Healthcare Advocates need only allege that a "special relationship" existed with Internet Archive involving the repose of special trust or fiduciary responsibilities, and that a breach of that relationship occurred. eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 22-23 (Pa.Super. 2002).  Generally, these relationships "involve[] a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other." Id.  A business association may form the basis of such a special relationship "if one party surrenders substantial control over some portion of his affairs to the other."  Commonwealth Dept. of Transp. v. E-Z Parks, Inc., 620 A.2d 712, 717 (Pa. Cmwlth.), appeal denied, 534 Pa. 651, 627 A.2d 181 (1993) (quoting In re Scott's Estate, 455 Pa. 429, 433, 316 A.2d 883, 886

(1974)).

A special relationship existed between Healthcare Advocates and Internet Archive giving rise to a fiduciary duty by Internet Archive to block public access to Plaintiff's historical archived web content.  As is reasonably inferred from the Complaint, Internet Archive has engaged in unilateral reproduction, distribution and public display of Plaintiff's copyright-protected web pages that Internet Archive had gathered, stored on its servers, made available to the public, and publicly disseminated without the authorization of Healthcare Advocates. Complaint at ¶¶ 19-23.

The power dynamic between Internet Archive and Healthcare Advocates was extraordinarily inequitable.  Internet Archive had the power to take advantage of  all of Healthcare Advocates' rights of copyright in its historical web content, a power that Internet Archive largely chose to exercise.  Internet Archive engaged in unauthorized reproduction of this historical web content when it elected to copy and store in on its servers; Internet Archive engaged in unauthorized public display of this historical web content by virtue of making it publicly available via the Wayback Machine at **www.archive.org**; Internet Archive facilitated the unauthorized distribution of this historical web content by permitting interested individuals who accessed it via the Wayback Machine at **www.archive.org** to make their own electronic and hard copies of this material.

Healthcare Advocates ability to make free and unfettered productive use of its historical web content was held hostage by Internet Archive's usurpation.  By not taking affirmative action until July 9, 2003 to halt Internet Archive's pattern and practice of engaging in copyright infringement, Healthcare Advocates surrendered control to Internet Archive over rights to its historical web content.  Internet Archive was in a position to destroy any beneficial interest

Healthcare Advocates had in these copyright-protected works.

By virtue of this fiduciary relationship, Internet Archive owed Healthcare Advocates a duty to block public access to Plaintiff's historical archived web content if Healthcare Advocates installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site.  Complaint at ¶ 23.  Internet Archive failed to act in good faith in performing this duty, causing damage to Healthcare Advocates. Complaint at ¶¶ 25-37.

Internet Archive's motion to dismiss Count X should be denied.


**K.   Healthcare Advocates Has Stated a Claim in Count XI for Negligent Dispossession Upon Which Relief Can Be Granted**

Internet Archive contends that Count XI should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law negligent dispossession.

To plead a claim for negligent dispossession with legal sufficiency, a plaintiff must allege that a duty existed, the range of the duty, that the duty was breached by the lack of due care resulting in the act of dispossession, and that the harm was a foreseeable consequence.  Spickler v. Lombardo, 3 Pa. D. & C.3d 591, 612 (Pa.Com.Pl. 1977).  This cause of action "rests on principles of ordinary negligence," requiring a breach of duty by absence of reasonable care which causes harm.  Id. at 608.

Internet Archive owed Healthcare Advocates a duty to prevent public access to Plaintiff's historical archived web content on and after July 9, 2003 when Healthcare Advocates had properly installed the denial text string in the robots.txt file on the computer server hosting the **www.healthcareadvocates.com** web site as directed.  Complaint at ¶¶ 23-24.  Internet Archive

failed to exercise reasonable care to prevent such public access which permitted Harding, Earley law firm to attempt unauthorized access to Plaintiff's historical archived web content through the Wayback Machine at **www.archive.org** on July 9, 2003 and July 14, 2003 on at least 716 separate occasions and to successfully obtain unauthorized access to these archived web pages on at least 92 separate occasions causing harm to Healthcare Advocates. Complaint at ¶¶ 25-37. Moreover, the conduct of Harding, Earley law firm and the resulting harm was a foreseeable consequence of Internet Archive's breach of its duty.

Internet Archive boldly contends that negligent dispossession, like trespass to chattels, requires interference with "some tangible form of property." Def. Bf. at 13. As support for this legal theory, Internet Archive disingenuously cites two cases in a manner to suggest that they directly state this proposition. Nothing could be further from the truth. In fact, neither of these cases even addresses the cause of action of negligent dispossession much less the form of property that must be implicated by the dispossession. Internet Archive has failed to carry its burden of establishing that because the dispossession here involves intellectual property, Healthcare Advocates has failed to adequately plead this cause of action.

Internet Archive's motion to dismiss Count XI should be denied.


**L. Healthcare Advocates Has Stated a Claim in Count XII for Negligent Misrepresentation Upon Which Relief Can Be Granted**

Internet Archive contends that Count XII should be dismissed because Healthcare Advocates has failed to sufficiently plead facts demonstrating that it committed common law negligent misrepresentation.

A plaintiff must allege the following to maintain its claim for negligent misrepresentation: "(1) a misrepresentation of material fact;  (2) made under circumstances in

which the misrepresenter ought to have known of the falsity; (3) with an intent to induce another

to act on it; and (4) which results in injury to a party acting in justifiable reliance on the

misrepresentation."  Bortz v. Noon, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999).  The

misrepresentation must concern a material fact and the speaker need not know his or her words

are untrue, but must have failed to make a reasonable investigation of the truth of these words.

Id.  Moreover, like any action in negligence, there must be an existence of a duty owed by one

party to another. Id.

Internet Archive owed Healthcare Advocates a duty to prevent public access to Plaintiff's

historical archived web content on and after July 9, 2003 when Healthcare Advocates had

properly installed the denial text string in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site as directed.  Complaint at ¶¶ 23-24.  Internet Archive

made a material misrepresentation to Healthcare Advocates that public access to these archived

web pages would be blocked if Plaintiff followed these instructions.  See Complaint at ¶¶ 23 &

25-37.  On or before July 9, 2003, Internet Archive ought to have known of the falsity of this

representation yet failed at the very least to make a reasonable investigation of the truth of this

statement.  Complaint at ¶¶ 23 & 33-35.  Internet Archive clearly intended to induce Healthcare

Advocates to install the denial text string in the robots.txt file on the computer server hosting the

**www.healthcareadvocates.com** web site in order to block public access to Plaintiff's historical

archived web content, and Healthcare Advocates justifiably relied upon the misrepresentation to

its detriment causing injury.  Complaint at ¶¶ 24-37.

Internet Archive's motion to dismiss Count XII should be denied.

**M. To the Extent that the Court Determines Healthcare Advocates Has Been Deficient in Pleading any Cause of Action, Plaintiff Moves to Amend the Complaint to Cure Such Deficiencies**

As noted above, a court in the Third Circuit must grant leave to amend before dismissing a complaint absent bad faith, undue delay, prejudice, or futility.  Alston, 363 F.3d at 235-36; Weston, 251 F.3d at 428.  Even if the Court finds deficiencies in the manner in which the causes of action in the Complaint have been pleaded such deficiencies would not have resulted from any bad faith conduct on the part of Healthcare Advocates, and amending the Complaint to remedy these pleadings would not cause undue delay, prejudice or constitute an exercise in futility. Therefore, the Court should grant Plaintiff's motion to amend the Complaint conditional upon the Court identifying an deficiencies in pleading the causes of action contained therein.

**V.  CONCLUSION**

For the above stated reasons, Healthcare Advocates respectfully requests that this Honorable Court deny the motions to dismiss of Harding, Earley law firm and Internet Archive, grant its cross motion to amend the Complaint in the event that any deficiencies in the pleading are identified, and enter an order in the form proposed by Healthcare Advocates.

**McCARTER & ENGLISH, LLP**
Attorneys for Plaintiff
Healthcare Advocates, Inc.


By: s/Peter J. Boyer
PETER J. BOYER (PB-1913)
SCOTT S. CHRISTIE (SC-8280)
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of September 2005, I served copies of the foregoing

Memorandum of Law in Opposition and Proposed Form of Order upon the following counsel in

the manners indicated below:

<u>By First-Class Mail and Electronic Mail</u>
Jeffrey P. Lewis
MCKISSOCK & HOFFMAN, P.C.
105 East Evans Street, Suite D
PO Box 3086
West Chester, PA 19381
*Attorneys for Defendant Harding, Earley, Follmer & Frailey*

<u>By First-Class Mail and Electronic Mail</u>
Hara K. Jacobs
Paul Lantieri III
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Kenneth B. Wilson
Stephani E. Shanberg
Esha Bandyopadhyay
Sarah E. Piepmeier
PERKINS COIE LLP
180 Townsend Street, Third Floor
San Francisco, CA 94107-1909
*Attorneys for Defendant Internet Archive*

<div align="right" style="margin-left:40%">

**McCARTER & ENGLISH, LLP**
Attorneys for Plaintiff
Healthcare Advocates, Inc.

By: <u>s/Peter J. Boyer</u>
    PETER J. BOYER (PB-1913)
    SCOTT S. CHRISTIE (SC-8280)
    Mellon Bank Center
    1735 Market Street, Suite 700
    Philadelphia, PA 19103
    (215) 979-3800

</div>

ME1\5213740.2